UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

                         **DEFENDANT'S SENTENCING MEMORANDUM**

V.                          Docket No.:0090 1:21 CR00420-001

WILLIAM P. TRYON,
          Defendant.

## INTRODUCTION AND BACKGOUND

On October 18, 2021, defendant William P. Tryon pleaded guilty to Count One of the Information charging him with Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. §1752(a)(1), a misdemeanor. The factual bases for Mr. Tryon's plea of guilty concern his illegal entry into the US Capitol Building on January 6, 2021, following his attendance at a rally held at the Ellipse by then-President Donald J. Trump. After being denied entry into the building by police officers, and after being pepper sprayed by police, the defendant entered the building through an unguarded door that had been opened by another individual. The defendant left the US Capitol Building when directed to do so by police officers.

At no time did the defendant damage any property, assault a police officer, or cause injuries to anyone, including any police officers, on January 6, 2021. As stated by the defendant during an interview given to a reporter that day, "All we want to do is enter, and tell our representatives we want our country back. We're not going to take this." When contacted by the FBI, the defendant gave a full, voluntary, and comprehensive statement regarding his activities on January 6, 2021. The defendant

1

has taken full responsibility for his actions, and has shown remorse and contrition since his arrest on March 30, 2021.

## PRESENTENCE INVESTIGATION REPORT/GUIDELINE COMPUTATIONS

Mr. Tryon is prepared to be sentenced by the Court on January 14, 2022. He has submitted no objections to the Nonguideline Misdemeanor Presentence Investigation, Report, including the factual content and offense level computation. Mr. Tryon accepts that the guideline computation is accurately stated as a level 4, which includes a downward adjustment for acceptance of responsibility for the offense. U.S.S.G. §3E1.1(a). Mr. Tryon's total criminal history score is zero, establishing a criminal history category of I (U.S.S.G., Chpt. 5, Part A), and a corresponding guideline imprisonment range of zero months to six months. Because Mr. Tryon's applicable guideline range falls within Zone A of the Sentencing Table and the instant offense does not fall within any of the restrictions set forth in U.S.S.G. §5C1.1(b), a sentence of imprisonment is *not required* unless the applicable guideline in Chapter Two expressly requires such a term.

## ARGUMENT

While the Court must still consider the sentencing guidelines, the guidelines are "merely one sentencing factor among many, and the calculated guidelines range must be considered in conjunction with other §3553(a) factor." *United States v. Booker*, 543 U.S. 220 (2005). Among the various factors provided under 18 U.S.C. 3553(a), the sentencing judge must consider:

> (1) The nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) The need for the sentence imposed –

      (A) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
      (B) To afford adequate deterrence to criminal conduct;
      (C) To protect the public from further crimes of the defendant;
(3) The kinds of sentences available;
(4) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(5) The need to provide restitution to any victims of the offense.

The federal sentencing statute requires a "sentence sufficient, but not greater than Necessary" to meet certain goals, which includes a consideration of both statutory and human factors in determining an appropriate sentence. In consideration of all factors, the defense requests that the Court exercise leniency in sentencing Mr. Tryon.

## CONDIDERATION OF SENTENCING FACTORS AS APPLIED TO WILLIAM P. TRYON

### 1. The Nature and Circumstances of the Offense

The offense of Entering or Remaining in a Restricted Building or Grounds in violation of 18 U.S.C. §1752(a)(1), involved Mr. Tryon entering the U.S. Capitol Building without permission, and after being informed that he was not permitted to enter. From the moment of his arrest, Mr. Tryon has unconditionally accepted full responsibility for his actions.

While Mr. Tryon is in no way attempting to minimize his conduct, it should be noted that Mr. Tryon did not cause any damage to property, nor did he physically assault or attempt to assault any member of law enforcement. In fact, when Mr. Tryon was directed to leave the U.S. Capitol Building by police, he did so.

### 2. The History and Characteristics of Mr. Tryon

Mr. Tryon is seventy-one years old, married for thirty-five years, the father of

3

five, and grandfather of six. He has been self-employed – and largely self-sufficient – for nearly fifty years. He and his wife, Jill Tryon, subsist off of their farm, Jill's greenhouse business, and Mr. Tryon's excavating business. The Tryons grow most of their food, wear mostly second-hand clothing, and do not have cellphones or cable television. In short, Mr. Tryon is a man of simple means, who earns a very modest living. He and his wife work very hard to provide for themselves and their family, paying their taxes and asking for little in return.

Mr. Tryon' character can best be ascertained by reading the seventy-eight letters submitted to the Court on his behalf. While the sheer number of letters might attest to the support Mr. Tryon enjoys in his community, it is truly the substance of those letters that illustrate his true character. Among these letters are attestations from family, friends, neighbors, law enforcement members, pastors, and public officials.

The overwhelming opinion of Mr. Tryon is that he is a kind, generous, humble, hard-working, God-fearing, devoted family man, who passionately loves his community and his country. These letters are replete with descriptions of Mr. Tryon as selfless, decent, sincere, righteous, compassionate, humble, trustworthy, dependable, and a man of honor and integrity. Marc Tryon describes his brother as salt of the earth, a civic-minded neighbor, who is respectful and honest. George McHugh, a retired Army Colonel who served as both a Judge Advocate and a Military Judge, currently serving as Coeymans Town Supervisor, describes Mr. Tryon as respectful, professional and kind – someone who "has always shown the deepest respect for the rule of law." Having known Mr. Tryon for over ten years, Mr. McHugh believes that Mr. Tryon's actions represent an isolated lapse in judgment, and that Mr. Tryon "sincerely and deeply regrets his role in the events of that terrible day." Mr. McHugh asks this Court to sentence Mr. Tryon to an appropriate punishment, absent a period of incarceration.

Mr. Tryon's wife of thirty-five years, Jill Tryon – who arguably knows him best – states that her husband has been regretful and ashamed of his actions. She stresses that a sentence of incarceration would be a great hardship on their family and their family farm.

Please note, these letters are written by men and women who have known Mr. Tryon for months, to years, to decades. These are the people who truly know Mr. Tryon, who observe his true character and witness his good deeds on a daily basis. The undeniable picture of Mr. Tryon revealed by these letters is one of a truly good man, driven by his passion and love of country, who made a terrible mistake.

### 3. The Need for the Sentence Imposed

A minimum required sentence without any period of confinement in this case would reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense. Mr. Tryon wholeheartedly regrets his conduct in the instant offense, has acknowledged the wrongfulness of his conduct, and accepts responsibility for same. He wishes to move beyond this lapse in judgment and continue being a dedicated husband, father, and grandfather; to continue to work his farm and his excavation business. Mr. Tryon has been more than adequately deterred from any future criminal conduct, as this incident has impacted his life beyond measure. There is no need to protect the public from any future crimes by Mr. Tryon, as he has no intent to engage in any conduct that might even be construed as improper.

### 4. Types of Sentences Available and the Need to Avoid Unwarranted Sentence Disparities among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct

In this case, the Sentencing Guidelines authorize an imposition of an imposition of a term of probation, community service, and supervised release. It is respectfully submitted that any sentence involving a period of incarceration would be inappropriate as it would be greater than

necessary to comply with the statutory purposes of sentencing. Mr. Tryon has no criminal history points, and his conduct involves a serious but isolated lapse in judgment that did not result in property damage or personal injury. Mr. Tryon had no intent to violate the law, although he certainly did so. He, like some others present on January 6, 2021, allowed his emotions and passionate views to cloud his better judgment. Mr. Tryon appreciates that other protesters that day committed terrible acts of vandalism and assault, for which he regrets that he is now associated. However, Mr. Tryon personally injured no one. He neither stole nor vandalized property, and he received no benefit from his conduct. In fact, Mr. Tryon is appalled and disgusted by the heinous actions of those who did so.

A period of community confinement, home detention, or intermittent confinement would be excessive under the circumstances of the offense. A sentence of non-confinement would not create any unwarranted sentence disparities and is available to the Court as an appropriate disposition for Mr. Tryon. Furthermore, Mr. Tryon is of such limited financial means that he does not have the resources to pay a fine in addition to his restitution obligation.

5. **The Need for Restitution: 18 U.S.C. §3553(a)(7)**

Mr. Tryon and the Government have agreed that Mr. Tryon shall pay $500.00 in restitution to the Architect of the Capitol.

## ACCEPTANCE OF RESPONSIBILITY

Mr. Tryon has fully accepted responsibility for his conduct in this case. From the moment Mr. Tryon was questioned by law enforcement in this matter, he has, without hesitation, answered every question regarding his involvement and actions on January 6, 2021. Mr. Tryon has never attempted to avoid responsibility for his conduct; rather, he has, at every turn, fully and contritely admitted his conduct and accepted responsibility for his actions. As Mr. Tryon

professed in his written statement contained in the PSR, "I William Paul Tryon do take sole responsibility for my actions at the Capitol on Jan. 6. My emotions and I were swept up in the moment when I stepped into that building, breaking the trespassing laws of our nation. I am truly sorry and remorseful for my actions! My heart is to defend and support the laws of this great nation, and by my actions I broke those same laws!"

During his plea, Mr. Tryon acknowledged the information contained in the factual basis section of his plea was accurate. During his presentence interview, Mr. Tryon agreed with the conduct described in the Statement of Offense as presented to the Court prior to his guilty plea. At all times during this process, Mr. Tryon has not only accepted responsibility for his actions, but has demonstrated remorse. Based on the foregoing, the two-level reduction for Acceptance of Responsibility is appropriate. U.S.S.G. §3E1.1(a).

## CONCLUSION

Mr. Tryon's conduct did not directly cause any loss to the government or involve any victims. Mr. Tryon has been an active and productive member of his community for well over fifty years. Any period of imprisonment would be unnecessary to satisfy the purposes set forth in 18 U.S.C. §3553(a)(2). Therefore, based upon consideration of the factors set forth in 18 U.S.C. §3553(a) and its statutory directive that mandates the Court to "impose a sentence, sufficient, but not greater than necessary, to comply with the purposes set forth in [18 U.S.C. §3553(a)(2)]", the defense respectfully requests that this Court sentence William P. Tryon to a minimum required punishment, absent a period of incarceration.

DATED: January 7, 2022

ABELOVE LAW, P.C.

*Joel E. Abelove*
JOEL E. ABELOVE
Attorney for the Defendant
William P. Tryon
1702a Central Avenue
Albany, New York 12205
Telephone: (518) 750-4011
Facsimile: (518) 750-4012
Email: abelovelaw@gmail.com

8